Fire Ins. Asso. of England *vs.* Merchants and Miners Trans. Co.

it was to be put, and that the owner knew or by the exercise of reasonable diligence could have known of its condition, and that one who was lawfully on the wharf, and was injured in consequence of its condition, that the owner is liable.

This was substantially the instruction of the Court, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 4th January, 1887.)

THE FIRE INSURANCE ASSOCIATION (LIMITED) OF ENGLAND *vs.* THE MERCHANTS AND MINERS' TRANSPORTATION COMPANY.

*Insurance—Who may Insure—Insurance by Carrier or other Bailee for benefit of the Owners—Who may Recover thereon—Insurance for Account of Whom it may Concern—Conflict between Written and Printed parts of the Policy—Floating policies—Construction of Policy—Res inter alios acta.*

Where a person has the custody, care or possession of property for another, and bears the relation to it of consignee, carrier, factor, warehouseman or bailee, he may, although he has no pecuniary interest therein, and is not responsible for its safe-keeping, insure it in his own name for the benefit of the owners; and the insurance will inure to their benefit upon a subsequent adoption of the insurance, even after the happening of a loss under the policy.

And the person effecting the insurance may, in the event of a loss, recover the insurance in his own name, for the benefit of the owners, although his own loss covered by the policy has been paid, and whatever is recovered will go to them.

Where the policy is taken " for account of whom it may concern," extrinsic evidence may be adduced to show who was in fact the

party concerned; and any one having title to the property at the time of loss may, if he adopt the contract, avail himself of its advantages, provided it be shown that his interest was within the contemplation of the party procuring the insurance.

The adoption of the policy need not be in any particular form; anything which clearly evinces such purpose is sufficient. Adoption is a question of fact for the jury.

Where the written and printed portions of a policy conflict, effect must be given to the former.

Courts will not draw fine distinctions, or be nice about the grammatical construction of sentences, whether in insurance contracts or others, in order to sustain a defence in which there is no merit.

A policy of insurance "for account of whom it may concern," effected by a carrier corporation upon cotton consigned to it for transportation, contained the following clause: "In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon; and it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner. Any floating policy attaching, in whole or in part, to the property covered by this policy, shall, as between the insured and this company, be considered as contributing insurance for the full amount of such policy, and liable as such to pay *pro rata* any loss, total or partial, on the property hereby insured." In an action on the policy brought by the carrier for the benefit of the owners who held floating policies, effected by themselves, purporting to cover the cotton, it was HELD:

1st. That by the stipulation contained in the latter part of said clause, any floating policy attaching to the property, whether effected by the assured or the owner, or any other party interested, should, (as between the insured and insurer under said policy,) be brought under the rule of contribution.

2nd. That whether said floating policies attached to said cotton, depended so far as the parties to this suit were concerned, upon the construction they received in this suit, although the companies who issued them were not parties thereto; no matter how they

might be construed by other Courts, or in other suits between other parties.

A policy covering "the risk of fire on shore for ten days prior to shipment," means that if the property insured is burned while on shore and awaiting shipment, and the loss occurs within ten days after the insurance upon it is effected, the policy covers the loss; but if the fire occurs after the lapse of such ten days, the risk does not attach.

In an action against an insurance company on a policy of insurance, an agreement between the plaintiff and another insurance company, executed after the suit was brought, and to which the defendant company is not a party, is *res inter alios*, and inadmissible as against it.

APPEAL from the Superior Court of Baltimore City.

The case was tried before the Court without the intervention of a jury, and is stated in the opinion of this Court.

*First Exception.*—At the trial the plaintiff offered in evidence the following agreement:

Agreement between the Mechanics Insurance Co., of Philadelphia, Pa., of the one part, and the Merchants and Miners Transportation Co., of the City of Baltimore and State of Maryland, of the other part: It is agreed, in consideration of the forbearance of the party of the second part, not to institute suit against the party of the first part, for loss arising by the burning of certain bales of cotton in the shed of the Norfolk & Western Railroad Co. at Norfolk, Va., insured against loss by policy No. 29,518, in the company of the first part, that the said Mechanics Insurance Co. will pay in full the amount mentioned in Schedules Nos. 1 and 2, hereto annexed, should it be decided in the case of the *Merchants and Miners Transportation Co. vs. Fire Insurance Asso. (limited) of London, Eng.*, in the Superior Court of Balto. City, that the fire insurance companies which have insured against such loss, are liable for the full amount of the loss so insured

against, or the said Mechanics Insurance Co. will pay its proportionate share of the loss, if the Court shall decide that the fire insurance companies are only required to make contribution for the loss with any marine insurance company or companies that may be shown to have had insurance on the same cotton in its transit. It is further agreed, that the amount due by the party of the first part, upon the finding of the Court as aforesaid, shall be paid within thirty days after the date of the final judgment in the case above referred to.

Witness the seal of the parties of the first and second parts hereto, attested by their secretary, and the signature of the president of the respective companies, on the 29th day of December, A. D. 1884.

FRANCIS McMANUS,

President.

JNO. H. DAVIS,

(Seal's Place of the Mechanics'                 Secretary."
      Ins. Co. of Phila., Pa.)


To the admissibility of this agreement the defendant objected, but the Court (STEWART, J.,) overruled the objection, and permitted the agreement to be read. The defendant excepted.

*Second Exception.*—The plaintiff offered eight prayers, all of which are precisely alike, except that each applies to a different policy of insurance. The first of said prayers is as follows:

1. That if the Court shall find that the plaintiff is entitled to recover in this action, then in ascertaining the amount which the plaintiff is to recover, the Court is not to make any abatement thereof on account of the policy of insurance of the Delaware Mutual Insurance Company issued to the Pacific Mills offered in evidence by the defendant.

The defendant offered the eight prayers following:

1. The plaintiff is not entitled to recover in this case for the benefit of the owner of any portion of the property

which was lost or injured, without proof that the plaintiff, at the time it procured the policy sued on, intended it for the benefit of such owner, and that such owner authorized said policy to be effected, or that it was subsequently adopted by such owner, and the interest of such owner must be shown not only to have existed at the time said policy was issued, but to have continued to the time of the loss; and there is no such proof in the case.

2. That there is no evidence in the case that such preliminary proof of loss, as is required by the ninth condition of the policy sued on, was furnished by the plaintiff, as required in said condition, and there is no evidence that such preliminary proof of loss was waived by the defendant, and the plaintiff is not entitled to recover.

4. That if the plaintiff is entitled to recover in this action at all, the measure of damages is as to any part of the property lost or injured, only such proportionate part of the loss of and injury to said property as the amount of defendant's policy bears to the whole amount of all the policies issued by all the companies in said property, under the policies referred to in the preliminary proof of loss and those offered in evidence, including defendant's policy.

5. That if the plaintiff is entitled to recover in this action at all, the measure of damages is only such proportionate part of the loss of and injury to the cotton covered by its policy as the amount of said policy bears to the whole amount of the policies issued by the fire insurance companies on the said property, under the policies referred to in the preliminary proof of loss, including defendant's policy.

6. That for the purpose of estimating the injury to any property which was burned, but not destroyed, the proceeds of sales of such property must be deducted from the sound value thereof, and the defendant is not liable for the loss of said proceeds.

7. The plaintiff has offered no evidence legally sufficient to entitle it to recovery under the pleadings in the case.

8. The plaintiff is not entitled to recover for loss of any of the property covered by the policies of the marine insurance companies referred to in its preliminary proofs of loss.

10. The evidence in the cause furnishes no sufficient means of determining the amount, if any, the plaintiff is entitled to recover, and it is therefore not entitled to recover in this suit.

The Court granted all the prayers of the plaintiff, and rejected all the prayers of the defendant, except the fifth and sixth which it granted. The defendant excepted, and the verdict and judgment being against it, this appeal was taken.   •

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, and BRYAN, J. .

*Frank Gosnell,* and *Charles Marshall,* for the appellant.

*Wm. Pinkney Whyte,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from a judgment for $4777.49, recovered by the appellee against the appellant in an action on an insurance policy, issued by the latter to the former on the 1st of November, 1883. The case was tried before the Court without a jury, and two exceptions were taken, one to the admissibility of evidence, and the other to rulings upon propositions of law. Of the two main questions which these exceptions present for review, one goes to the right of recovery to any extent, and the other raises the

question of contribution under the seventh condition of the policy.

The written part of the policy is that the Fire Association "in consideration of $30, to them paid by the insured hereinafter named, the receipt whereof is hereby acknowledged, *do insure,* the Merchants and Miners Transportation Company, *for account of whom it may concern,* against loss or damage *by fire* to the amount of $5000, on merchandise, being chiefly cotton in bales, its own, *or in its care or custody as carriers,* and for the amount of earned freight and charges, if any, thereon, stored in the frame metal roof freight shed of the Norfolk and Western Railroad Company, situate nearest the water front of its wharf and dock, at the lower end of Main street, in Norfolk, Virginia, and marked No. 1 on diagram; loss, if any, payable to Geo. J. Appold, Treasurer Merchants and Miners Transportation Company, *for account of whom it may concern.* Other insurance permitted." By the printed terms immediately following the insurer agrees "to make good unto the said assured, their successors, executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by *fire* to the property so specified, from the 31st day of October, 1883, to the 31st day of December, 1883; the amount of loss or damage to be estimated according to the actual cash value of the property, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at the office of the company in Philadelphia." It is not necessary to state, at present, any of the other provisions or conditions of this instrument.

The circumstances which led to this insurance are substantially as follows: The Merchants and Miners Transportation Company is a common carrier by water, and in

October and November, 1883, was engaged in transporting cotton from Norfolk, to ports in the New England States. The firm of Inman & Co. had purchased cotton for certain New England Cotton Mills, at Atlanta, and other points in the cotton growing States, and as consignor was forwarding the same to the mills, *via* Norfolk. This cotton arrived by rail at Norfolk, in large quantities during the latter part of October and the first of November, and the transportation company had difficulty in procuring steamers or vessels to carry it on to its destination, and it was stored in one of the freight sheds of the railway company at its wharf to await transportation. In this state of things, the transportation company took out this policy, together with twenty-two others of like character, but of different amounts, in twenty-two other fire insurance companies. The aggregate of insurance thus effected was $50,750, and the premiums paid therefor amounted to $299.75. After these policies had been issued and while the cotton remained thus stored, the carrier company by its agent executed a receipt for the same on the 6th of November, so that it then came within the terms of the policy as being in the "care or custody" of the assured, "as carriers." On the 14th of November, a fire occurred in this freight shed, by which 1010 bales of this cotton were destroyed or injured. How the fire originated is not explained except in the preliminary proof of loss by Mr. Appold, the president of the assured, who states he believes it was from a spark emitted by a tug or steamer in the adjacent river, and in the absence of other proof on the subject we must assume it was from this or some unknown cause. The value of the cotton thus burned, exclusive of salvage, was between $47,000 and $48,000. No part of it was owned by the carriers, and the cotton mills who were the owners and consignees thereof held open or floating policies in other companies under which they insured their cotton while in transit from the

place of purchase to the mills. These have been termed in argument, marine policies, and we shall refer to them again. It turned out at the trial that when these carriers received the cotton, they received it under the terms of a *bill of lading* by which they were exempt from loss by "fire, from any cause on land or water," and consequently they were not liable over to the owners for this loss. There was no "earned freight," and before this suit was brought they had been paid by the insurers all that they had demanded in the shape of "charges" and expenses. The suit therefore must be prosecuted, if at all, solely for the benefit of the owners, and whatever is recovered must go to them.

1st. Upon these facts the question arises can the suit be maintained ? In our opinion it can, and we shall state briefly the grounds of that opinion. It has been decided by this Court, and upon abundant authority, that a person having goods in his possession as consignee, or on commission, may insure them in his own name, and for their full value, and in the event of loss, recover the full amount of the insurance, and after satisfying his own claim hold the balance as trustee for the owner. *Hough, Clendening & Co. vs. Peoples' Fire Ins. Co.*, 36 *Md.*, 432. The law as thus stated is, of course, based upon the assumption that the assured had an insurable interest in the property at the time of the insurance, and we are inclined to the opinion that this transportation company had such interest, at least in respect to "charges" and freight expected to be earned, notwithstanding it had no pecuniary interest in or ownership of the cotton itself, and was not liable over for its loss by fire. But however that may be, the law goes further, and it is now well settled that where a person has the custody, care or possession of property for another and bears the relation to it of consignee, carrier, factor, warehouseman or bailee, he may, though he has no pecuniary interest therein and is not responsible for its

safe-keeping, insure it in his own name for the benefit of the owners, and the insurance will inure to their benefit upon a subsequent adoption of the insurance even after the happening of a loss under the policy. 1 *Wood on Fire Insurance*, (*2nd Ed.*,) *secs.* 293, 294. And this must be so, otherwise policies "for account of whom it may concern," which are frequently taken out by and in the name of a party in possession, without any previous authority from the owner, could never have been upheld. But such policies are daily issued, and though more frequently used in marine insurance are sometimes found in other policies, and it has become elementary law in regard to them, that extrinsic evidence may be adduced to show who was in fact the party concerned, and any one having title to the property at the time of loss may, *by adoption* of the contract, avail himself of its advantages provided it be shown that his interest was within the contemplation of the party procuring the insurance. The fact that the interest of the owners was contemplated by the insurer in this case, seems apparent from the contract itself, when read, as it must be, in the light of the surrounding circumstances already stated. That this carrier company should have effected insurance against fire "for account of whom it may concern," and to an amount exceeding $50,000 on this cotton, when they did not own a bale of it and were not responsible for its loss by fire, without intending to protect thereby the interest of the owners, is almost incredible. The inference that they did so intend is strong if not irresistible. But at all events the proof is quite sufficient to warrant a jury in finding such intent. Nor is there any doubt but that these owners had an insurable interest when the loss occurred, for they were the absolute owners of the cotton then as well as when the insurance was effected. Have they then *adopted* this *policy?* As was said by the Supreme Court in a case where a similar policy was under consideration : " The adoption of

the policy need not be in any particular form.   Anything which clearly evinces such purpose is sufficient." *Hooper vs. Robinson*, 98 *U. S.*, 537.   Adoption is a question of fact, and all we need say on this point is that we think there is enough in this record to have authorized a Court to submit that question to the finding of a jury.

But counsel for the appellant contend that by the terms of this policy the obligation of the insurer to make good the loss insured against is expressly limited to the interest of the assured.   The argument in support of this position is ingenious, and is founded upon what counsel insist is the true grammatical construction of that part of the printed portion of the policy above quoted.   According to this construction they contend that the terms " except as herein provided " refer to the "loss or damage," in the previous part of the sentence, and that their office is simply to exclude therefrom such loss as by *subsequent* conditions the insurer was exempted from paying, and that they in no wise modify the preceding terms which limit the amount to be paid to a sum *"not exceeding* the interest of the insured in the property."   But this reading would, as it seems to us, be in conflict with the intention of the parties as expressed in the *written* part of the instrument, and we have already said that this part read in connection with the surrounding circumstances, manifests an intention to insure more than the mere interest of the insured carrier.   There is ample authority, as well as good sense, for the position that where the written and printed portions of a policy conflict, effect must be given - to the former, because being incorporated into the contract *at the time it was made*, it is presumed that it expresses the actual agreement of the parties, and that they intended thereby to override that portion of the contract expressed in type which is inconsistent therewith.   1 *Wood on Ins.*, (2nd *Ed.*,) *sec.* 58.   But it is not necessary in this case, to

go to the extent of adopting the law as thus stated, for we think the terms "except as *herein* provided," in the connection in which they stand, are quite susceptible of being read as referring to the *written* as well as to the subsequent printed portions, and as *modifying* the immediately preceding terms limiting the extent of liability. So read they remove all conflict, and effectuate the intention of the parties as expressed in the written part; and this construction would seem to be sanctioned by the rule laid down of old by Lord HALE that "Judges ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties; they will not therefore cavil about the propriety of words when the intent of the parties appears, but will rather apply the words to fulfil the intent than destroy the intent by reason of the insufficiency of the words." *Crossing vs. Scudmore,* 2 *Lev.,* 9. Courts are no more inclined now, than they were in the days of Lord HALE, to draw fine distinctions, or be nice about the grammatical construction of sentences whether in insurance contracts or others, in order to sustain a defence in which there is no merit.

We regard this policy as an insurance upon specific goods stored in a specified place, under which the interest of the owners, if properly asserted, can be protected. If therefore a jury, or a Court acting as a jury, should find in their favor the facts which we have said must, under the proof in this record, be left to such finding, the action can be maintained; and from this it follows that the Court below was right in rejecting the defendant's first and seventh propositions or prayers. We are also further of opinion that, under the circumstances disclosed in the record, the plaintiff was in no default in furnishing the preliminary proofs of loss, and that there was evidence in the case which afforded sufficient means of determining the amount, if any, the plaintiff was entitled to recover. There was consequently no error in the rejection of the defendant's second and tenth prayers.

2nd. The second main question is that of contribution under the seventh condition of the policy and the defence founded thereon is clearly meritorious. This seventh condition is the latest modification that has fallen under our notice, of what has been termed the "American clause," and so much of it as need be stated is as follows:

"In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon ; and it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner. Any *floating policy* attaching, in whole or in part, to the *property* covered by this policy, shall, *as between the assured and this company*, be considered as *contributing insurance* for the *full amount* of such policy, and liable as such to pay *pro rata* any loss, total or partial, on the property hereby insured."

The latter paragraph seems to have been framed to meet precisely such a case as the present. As we read it the stipulation is plain that *any* floating policy *attaching* to the *property*, whether effected by the assured, or the owner, or any other party interested, shall as between the *insured and insurer* under this policy, be brought under the rule of contribution. In this case the owners had such floating policies which purported to cover this cotton, and whether they *attached* to it depends, so far as the parties to this suit are concerned, upon the construction they are to receive by this Court on this appeal. We do not agree in opinion with the learned Judge of the Superior Court, that it was not proper for him to determine the construction of these policies because the companies

who issued them are not parties to this suit.    They are documents produced in evidence in this case, and the rights of the parties to this suit are to be determined by the construction placed upon them in the first instance by the trial Court, and finally on appeal by this Court.    No matter how they may be construed by other Courts, or in other suits between other parties.    It is our duty therefore to consider these policies and ascertain their meaning and construction, and in doing this we have encountered very little difficulty.

They are thirteen in number, and were issued by four different companies.    There are some features common to all of them, and it may be said generally that they all insure cotton against loss by fire from any place of purchase in any southern State, by any route to the mills of the owners in the New England States.    They also contain stipulations accepting a risk of fire on those for a certain number of days before shipment.    As illustrating this, we take the policy of the Phœnix Insurance Company, insuring the Whittenton Manufacturing Company of Taunton, Mass., where the provision is : " also to cover the risk of fire on shore for ten days prior to shipment."    A literal reading of this stipulation would make it not only ineffectual but nonsensical, for cotton destroyed by fire cannot afterwards be shipped.    The evident meaning of it, however, is that if the cotton is burned while on shore and *awaiting shipment*, and the loss occurs within ten days after the insurance upon it is effected, then the policy covers the loss, but if the fire occurs after the lapse of such ten days then the risk does not attach.    In this particular case the insurance was from Norfolk to Taunton, and the cotton had been for some time stored in the freight shed awaiting shipment.    The insurance upon it was effected on the 7th of November, and the fire occurred on the 14th of the same month, less than ten days thereafter, and it seems to us too plain for argument that the loss is covered

by this policy.  No difficulty whatever is presented by any of the other policies unless it be the one by which the Delaware Mutual Safety Insurance Company insured the Massachusetts Cotton Mills, and in which is found the provision: "To attach as soon as waterborne."  But this we think, by a fair construction of the policy, refers to the immediately preceding provision which makes the policy cover coal from southern coal ports and places to Boston or Salem, and not to the provision which expressly insures cotton purchased or to be purchased and shipped from any ports and places in the United States, except Boston, "by *any route* to the mills at Lowell."

Such being our construction of these policies, we entertain no doubt but that they are contributing insurances within the meaning of the seventh condition of the policy in suit.  In our opinion, therefore, there was error in granting the plaintiff's eight prayers which deny the defendant's right to such contribution, as well as in rejecting the defendant's fourth prayer which asserts that right. Being of opinion that this is a case in which there must be such contribution, provided the plaintiff shall eventually succeed in maintaining the action and in recovering, we approve the rejection of the defendant's eighth prayer which throws the whole loss upon the marine policies.

We are also further of opinion that the Court below committed an error in admitting in evidence the contract referred to in the first exception.  It is an agreement executed after this suit was brought, and to which the defendant is not a party.  It seems to us to be clearly *res inter alios,* and inadmissible.

*Judgment reversed, and
new trial awarded.*

(Decided 4th January, 1887.)