PENNEFEATHER et al. v. BALTIMORE STEAM-PACKET CO.

(Circuit Court, D. Maryland. October 18, 1893.)

1. EQUITY JURISDICTION — MULTIPLICITY OF SUITS — COMPLICATED APPORTIONMENT.

Where a carrier secures insurance on goods belonging to numerous owners, for their benefit as well as its own, and, the goods being destroyed, collects the entire amount of the insurance, equity has jurisdiction, on the ground of avoiding a multiplicity of suits and the difficulty of making a proper apportionment, of a suit brought by some of the owners, for the benefit of all who might join with them, to recover their alleged proportional interests therein.

2. INSURANCE — COMMON CARRIERS AND SHIPPERS — PLEADING.

Where a carrier voluntarily, and primarily for its own benefit, insures goods received for transportation, but under policies purporting to insure "each and all owners of such goods," such owners may maintain a bill against it to recover insurance money, averring that they were insured, that the goods were destroyed, and that the carrier collected the entire amount of insurance.

3. SAME.

Where, however, the policies provide that no owner of goods, who has insured for himself, shall be entitled thereunder, except to the excess of his loss, a bill is demurrable which fails to state whether there was such other insurance, and its amount, if any; for if the carrier collected insurance on complainant's goods in excess of its own loss, and to which neither it nor complainant was entitled under the policy, this could give rise to no equities in favor of complainant.

In Equity. On demurrer to the bill. Demurrer sustained in part, and overruled in part.

v.58f.no.3—31

McFarland & Parkin, Richard M. Venable, and Edwin G. Baetjer, for plaintiffs.

Lemmon & Clotworthy, for defendant.

MORRIS, District Judge. This is a bill of complaint filed by three commercial firms (the partners of which are either citizens of Great Britain or Germany, or of the state of New York) claiming to be the owners of consignments of cotton shipped from places in the southern states, which the defendant corporation, the steam-packet company, had as a common carrier brought to the port of Baltimore, and alleging that while at the defendant's wharf, awaiting transshipment to other points, the complainants' cotton, together with a large quantity of other merchandise, was destroyed by fire.

The bill alleges that by the fire merchandise to the value of $75,000 was destroyed, belonging to numerous shippers unknown to the complainants, and this bill is filed on behalf of the complainants, and on behalf of all others similarly situated. It is alleged that all the merchandise destroyed, except to the extent of about $1,000, was shipped under bills of lading stipulating that the carrier should not be liable for loss by fire, occurring from any cause whatsoever. That the defendant, prior to the fire, had effected policies of insurance to the aggregate amount of $25,000 against loss by fire on all merchandise in which the said defendant or certain railroad carriers, jointly and severally, were interested as owner, agent, warehouseman, or carrier, or for or in respect to which they might be under any liability as agent, warehouseman, or carrier, loaded in cars or unloaded, or while lying at any wharves or piers. That the policy contained this clause:

"It is understood that this entire policy is subject to the following special construction, to wit: It is intended to insure the Seaboard & Roanoke Railroad Company et al., as heretofore mentioned in this policy, jointly or severally, against any and all loss or damage by fire, including loss of freight, dues, back charges, charges, advances, liens, and claims upon such goods, wares, merchandise, baggage, and property, and also to insure each and all owners of such goods, wares, merchandise, baggage, and property at time of loss. The assured shall, after loss or damage, give notice to the insurers of the names of each and all owners, and such notice shall be conclusive upon the insurers as to who were such owners: provided, however, that, if any owner or owners shall have insured for themselves, the loss or damage, if any, shall be paid hereunder only to the extent of the excess of loss or damage over the amount of insurance so collected by the said owner or owners, and also to the extent of any and all claims which the said owner or owners in their own rights, or the company or companies effecting such other insurance for the benefit of such owner or owners, by virtue of subrogation, assignment, or otherwise, shall make, have, own, or hold against any and all of the companies comprising the Seaboard and Roanoke Railroad Company et al., as heretofore mentioned in this policy, jointly and severally, as to any such goods, wares, merchandise, baggage, and property of every description, for or on account of any loss or damage insured against. It being understood and agreed that this company shall make good to the insured any loss that may be sustained, notwithstanding any clause or provisions in any bills of lading issued by the Seaboard & Roanoke Railroad Co. et al., as heretofore mentioned in this policy, jointly or severally, exempting or as designed to exempt them or their connecting lines from liability, and without regard to the legal liability of the Seaboard and Roanoke Railroad Co. et al., as hereinbefore mentioned in this policy, jointly or severally, to the owner or

owners of the property destroyed. And the insurers shall not, by subrogation, assignment, or otherwise, take, have, or hold any claim or demand against the Seaboard & Roanoke Co. et al., as hereinbefore mentioned in this policy, nor any of their officers, agents, or employes, as to any such property, for or on account of any loss or damage hereby insured against, or in payment thereof."

The bill of complaint then alleges that after the fire the defendant collected the $25,000 of insurance money, and claims that the said insurance was not only made to protect the defendant against any loss as carrier or warehouseman, but was also for the benefit of owners of merchandise whose goods might be in possession of said defendant, and that the interest of the owners was, in terms, the subject of the insurance, and insists that the complainants, as owners of their respective shipments of cotton, were insured under the policies, and were entitled to share in the insurance money collected by the defendant. The prayer is that it may be ascertained who are entitled to share in said insurance money, and in what proportions, and that all persons claiming any interest therein may be cited to appear and prove their claims, and that the defendant may account for and pay over to the complainants, and the others entitled to share therein, their proportionate shares of said insurance money, and for other relief.

The defendant has demurred to the bill of complaint for the following causes: (1) That there is no privity of contract between the complainants and defendant. (2) That the bill does not show that the plaintiffs have any right to the insurance money, or to maintain an action to recover any part of it. (3) That the bill does not aver facts sufficient to establish any equity, as against defendant. (4) That, by the terms of the policies set out in the bill of complaint, it was provided that if any owner of merchandise had insured for themselves, the loss payable under said policies should only be for the excess of loss over said insurance collected by the owner, and to the extent of any liability of the defendant to the owner, and that the bill of complaint contains no averment that the complainants, or any of them, were without full insurance on their own behalf. (5) That the bill of complaint does not aver that there was any surplus insurance money remaining in defendant's hands after satisfying the defendant's own losses, or losses for which it was liable. (6) That the bill of complaint does not aver that defendant had collected any insurance money by reason of, or on account of, the goods of the complainants, or any of them. (7) That if the defendant had collected any money belonging to complainants, or any of them, under said policies, the complainants, and each of them, had an adequate and complete remedy at law.

As to the objection urged that this is not a case of equity cognizance, it is true that each complainant, if he has a good cause of action, might maintain an action at law to recover the proportion of the fund collected by the defendant in respect to each complainant's goods; but it seems quite clear that the remedy at law is not adequate and complete, and would require a multiplicity of suits with regard to one subject-matter. If the complainants can recover, there will be serious difficulties, in a trial

at law, to determine what amount is to be distributed, and what proportion each is entitled to. It would depend on what the loss of each of the numerous shippers might prove, and the proportion of their losses to the whole fund proved to be remaining in defendant's hands for distribution. If their questions were settled by different juries in separate trials for each claimant, there would possibly be different results, with injuries to either plaintiff or defendant, and great expense. Oelricks v. Spain, 15 Wall. 211. In Snowden v. General Dispensary, 60 Md. 85, a bill in equity was filed by one dispensary on behalf of all entitled to share in certain fines collected by the sheriff, and was sustained. The court said:

"Then, again, at law, each dispensary would be obliged to sue separately; and in the one case the proof may show the defendant has or ought to have collected, in the aggregate, a certain sum, and, in another, that he has collected a greater or less amount. Besides, in one case it may appear that a certain number of dispensaries are entitled to the benefit of the act, and in another a greater or less number are entitled. The result would be a multiplicity of actions, and expensive and vexatious litigations, with different judgments, each varying in amounts; and this, too, in the face of the act of 1833, which provided that the fund shall be distributed equally among the several dispensaries entitled. By a bill in equity, with a prayer for discovery, all this may be avoided, and the rights of all concerned may be finally settled in one litigation."

The present case belongs to the class mentioned in 1 Pom. Eq. Jur. § 245, of which it is said equity will take cognizance to prevent a multiplicity of suits—

"(3) Where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as coplaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone."

Osborne v. Railroad Co., 43 Fed. Rep. 824; Emigration Co. v. Guinault, 37 Fed. Rep. 523.

As to the other grounds of demurrer, while it is to be inferred from the bill, and is conceded in argument, that the insurance effected by defendant was purely voluntary, and without charge to the complainants, and primarily for defendant's own protection, it does appear that the policies insured "each and all owners of such goods, wares, merchandise, baggage, and property;" and it is alleged that defendant collected the whole amount insured, and that it was collected, not only for defendant's own benefit, but also as agent of the owner of the goods destroyed. This averment that the owners of the goods were insured and their goods were destroyed, and that the defendant had collected the whole insurance, is sufficient to give the complainants a right of action. If it be a fact that the defendant did not claim or recover from the insurance companies anything in respect of the loss of complainants' goods, that, it appears to me, is matter of defense by answer or plea. So far as appears, the complainants do not know what were the losses for which the defendant claimed indemnity from the insurers. They find that defendant held policies which,

in direct terms, covered their goods, and they find that the insurance money has been paid. They are advised that it is the law that a carrier may insure the goods in its possession, and, in case of loss, recover the whole insurance, and, after paying its own claims, hold the residue for the owners. Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 543; California Ins. Co. v. Union Compress Co., 133 U. S. 423, 10 Sup. Ct. Rep. 365; Fire Ins. Ass'n v. Merchants' & Miners' Transp. Co., 66 Md. 339, 7 Atl. Rep. 905. If facts exist with regard to its settlement with the insurance companies which may release the defendant from accounting to complainants, those are matters within the defendant's knowledge, and must be pleaded by it.

There is, however, one ground of demurrer which I think is good, namely, that the bill of complaint contains no averment that the complainants have suffered loss in excess of insurance effected on their own behalf, and collected by them. It is an express stipulation of the policy that its meaning and intention is that no owner of goods who has insured for himself shall be entitled under this policy, except to the excess of his loss. There is no reason, that I am aware of, which should prevent effect being given to this express stipulation. Whether there was such insurance effected on their own behalf by the complainants is a matter within their own knowledge, and must be set out by them in their bill. It is urged on their behalf that whether the complainants have insured themselves or not, if the carrier has collected insurance money for their goods beyond its own losses, it is inequitable that it should not pay it over to the owner of the goods. If the defendant has collected from the insurers money which was not due under the contract of insurance, and which it is not entitled to retain, that may give rise to equities between the defendant and the insurers; but it furnishes no reason why the complainants should be twice indemnified for the same loss, contrary to the terms of the policy. The stipulation distinguishes the policy from those held to be contributory in Hough v. Insurance Co., 36 Md. 398.

My conclusion is that the demurrer must be sustained, because the complainants, respectively, have failed to allege what insurance, if any, they had effected on their own behalf, and what loss, if any, they have suffered in excess of such insurance collected by them, but the other causes of demurrer assigned by the defendant are held not to be well taken.