## THE HOME INSURANCE COMPANY OF NEW YORK

### *v.*

## THE PEORIA AND PEKIN UNION RAILWAY COMPANY.

*Opinion filed February 17, 1899.*

1. INSURANCE—*clause of a railroad insurance policy construed.* An item in a fire insurance policy issued to a railroad company doing a general terminal transfer business, which covers "freight cars of every description, the property of other roads, firms, individuals or corporations, *for which the assured are or may be liable,* while on the line of their road," insures against loss of cars described, and not merely against an actual legal liability proven to have accrued against the assured to account to the owners of the cars.

2. SAME—*term "liable" does not necessarily mean a fixed legal liability.* The word "liable," used in a fire policy issued to a railroad terminal transfer company covering freight cars of other owners for which the assured is or may be *liable* while on its road, does not signify a perfected or fixed legal liability, but rather a condition out of which a liability may arise, based on some duty which the assured owes to owners of cars in its custody.

3. SAME—*right of railroad terminal transfer company to insure cars in its custody.* A railroad terminal transfer company owing such a duty to cars of other owners while in its custody as may result in legal liability has an insurable interest in such cars, and when loss or damage occurs is entitled to recover the loss upon proof of such duty and hold the excess over its own interest for the benefit of the owners of the cars.

*Home Ins. Co. v. P. & P. U. Ry. Co.* 78 Ill. App. 137, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

JACK & TICHENOR, and SAM. E. HALL, for appellant:

Insurance policies should be construed the same as other written contracts. May on Insurance, sec. 172.

The subject of the insurance, its nature and its extent are to be ascertained from the words of the contract which the parties have made. *Insurance Co.* v. *Warehouse Co.* 93 U. S. 541.

The language of the policy controls, and property belonging to others is not covered by a policy such as this. *Insurance Co.* v. *Insurance Co.* 5 L. R. 567; *Keeley* v. *Insurance Co.* 1 Phila. 170; *Rafel* v. *Insurance Co.* 7 La. 244; *Railway Co.* v. *Insurance Co.* 113 Mass. 77; *Insurance Co.* v. *Loney*, 20 Md. 20; *Getchell* v. *Insurance Co.* 14 Allen, 325.

If one would insure for the benefit of the owners of property in his possession, this must appear from the use of apt terms in the policy to that effect. *Railroad Co.* v. *Insurance Co.* 56 N. W. Rep. 815.

The words of the policy "for which the assured are or may be liable," are not obscure or ambiguous, and must be given their full effect and not treated as surplusage. The words "liable" and "liability" mean bound in law or equity,—"the state of one who is bound in law and justice to do something which may be enforced by action." Bouvier's Law Dic.; Webster's Dic.

STEVENS, HORTON & ABBOTT, for appellee:

A carrier or warehouseman has an insurable interest in the goods received, and may insure them to the extent of his interest or lien only, or may insure them in his own name to their full value, and in case of loss recover the full amount of the insurance, for the satisfaction of his own claims first and hold the residue for the owner. *Compress Co.* v. *Assurance Co.* 74 Miss. 320; *Insurance Co.* v. *Warehouse Co.* 93 U. S. 527; *Insurance Co.* v. *Transportation Co.* 117 id. 312; *Insurance Co.* v. *Compress Co.* 133 id. 387; *Thomas* v. *Marble Co.* 58 Fed. Rep. 485; *Insurance Co.* v. *Transportation Co.* 66 Md. 339; *Railway Co.* v. *Glyn*, 1 E. & E. 652; *Waters* v. *Assurance Co.* 5 E. & B. 870; *Savage* v. *Insurance Co.* 36 N. Y. 655; *Lancaster Mills* v. *Merchants, etc. Co.* 89 Tenn. 1; *Johnson* v. *Campbell*, 120 Mass. 449; *Baxter* v. *Insurance Co.* 11 Biss. 306; *Siter* v. *Morris*, 13 Pa. St. 218; 28 Am. & Eng. Ency. of Law, 670; *Insurance Co.* v. *Favorite*, 46 Ill. 263; *Richmond, etc. Co.* v. *Insurance Co.* 79 N. Y. 230; *Hough* v. *Insurance Co.* 36 Md. 398.

An agreement with a depositor to insure the goods deposited with a warehouseman is enough to raise an insurable interest. The appellee offered to prove an agreement to carry insurance on all cars in its yards. *Pelzer Manf. Co.* v. *Sun Fire Office,* 36 S. C. 213.

The liability of the insurance company is not dependent upon the payment to the owner by the railroad company of the value of the property burned. *Insurance Co.* v. *Compress Co.* 133 U. S. 387; *Ex parte Norwood,* 3 Biss. 504; *Cashan* v. *Insurance Co.* 5 Biss. 476.

In construing a policy of insurance the insurer is the promisor, and in words or sentences of doubtful significance or ambiguous phrases the meaning most favorable to the insured is adopted. *Pittsburg Storage Co.* v. *Insurance Co.* 32 Atl. Rep. 58; *London Assurance Co.* v. *Companhia,* 167 U. S. 149.

The word "liable" is to be taken as used in its ordinary sense. So used, it does not signify an absolute or perfected legal liability. It is more frequently used as referring to a "future possible or probable happening which may not actually occur." *Insurance Co.* v. *Anderson,* 40 S. W. Rep. 200; *Cochran* v. *United States,* 157 U. S. 286; *Inhabitants of Saco* v. *Osgood,* 5 Me. 202.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellee company brought assumpsit on an insurance policy made and delivered by the appellant company, insuring certain cars and other property against loss or damage by fire, and recovered a judgment in the circuit court in the sum of $6502.90. The judgment was affirmed by the Appellate Court for the Second District on appeal. This is an appeal to bring the judgment of affirmance into review in this court. In the trial court the cause was submitted to the court without a jury. The judgment was for the value of thirty-eight freight cars which were destroyed by fire while on the tracks of the appellee company during the period covered by the policy.

Appellee, a railway corporation, was the owner of certain railroad yards in and near the city of Peoria, with tracks leading to certain breweries, elevators, etc., and was engaged at the time of the delivery of the policy, and at the time of the destruction of the property by fire, in doing a switching and terminal business in the city of Peoria, receiving the cars of other companies consigned to and from industries and elevators on its tracks, and carrying and storing such cars for charges to it paid, as well as doing a general railroad business. All of the railroad companies hereinafter mentioned in a quotation from the policy, except the Chicago, Burlington and Quincy Railroad Company, ran their trains into the city of Peoria on the tracks of appellee, and their cars and contents were delivered to appellee on the arrival of such trains, to be by it transferred or stored as directed, for certain charges to it paid. The railroad of the Chicago, Burlington and Quincy company connects with that of appellee, and the latter received and carried the former's cars consigned to it, from or to any industry or elevator on appellee's tracks, making a charge therefor. What was known as the "Iowa elevator" was on the tracks of appellee, and was one of the elevators to and from which it carried cars for other companies. The cars destroyed by fire were brought into the city of Peoria and delivered to appellee by the companies mentioned in the stipulation, to be transferred or stored as directed, in the customary and usual manner.

The particular provisions of the policy relied upon by the appellee are as follows:

"44. $50,000—On freight cars of every description, the property of other roads, firms, individuals or corporations, *for which the assured are or may be liable,* while on the line of their road, the limit of loss, if any, on any one freight car not to exceed $500.

"45. $20,000—On passenger cars, the property of other roads, firms, individuals or corporations, for which the

assured are or may be liable while on the line of their
road, the limit of loss, if any, on any one passenger car
not to exceed $2500.

"Names of roads owned or operated by the assured on
the lines of which the above described rolling stock is to
be covered, viz.:   Peoria and Pekin Union railway and
upon the tracks of the Iowa Elevator Company at Peoria,
Ill., and also on tracks known as No. 5 and 6 on property
of the Iowa Elevator Company, said tracks owned by the
Iowa Central Railway Company and operated under lease
by the Peoria and Pekin Union Railway Company, and
also on tracks of Toledo, Peoria and Western Railway
Company in Peoria."

The contention is as to the true interpretation of these
items, particularly item No. 44, as the cars which were
burned were freight cars.

The position of the appellant company is, its under-
taking, according to the true interpretation of the policy,
is not to insure the appellee company against loss or
damage to the cars, but only against loss by reason of a
liability legally accruing against the appellee company,
if any, to account to the owners of the cars for the loss
of or damage to the cars by fire, and that in order to en-
title the appellee company to recover, it was essential
the liability of the company to account and pay to the
owners of the cars should be made to appear by the proof
in the same manner as would be necessary in an action
by the owners of the cars against it to recover upon such
liability.   We do not so construe the policy.   The words
and phrases employed in insurance policies are chosen
by the insurance company.   For this reason, and perhaps
also for other reasons, it has become the settled rule of
construction the language of a policy shall be interpreted
most strongly against the author of the instrument.   The
words in item 44, "for which assured are or may be lia-
ble," which we have caused to be italicized, were not, ac-
cording to our interpretation, incorporated into the item

for the purpose of indicating that it was the liability of the assured to account to the owners for the cars that was the subject of the indemnity, but for the purpose of restricting the obligation of the insurer with regard to the class of cars to be covered and protected by the policy. It was not the intention of the insurer to insure any and every freight car belonging to "other roads, firms, individuals or corporations" which might be on the line of appellee's road, but only such cars belonging to such "other roads, firms, individuals or corporations" on appellee's line of road as assured had such control of or such connection with as that a liability might accrue against such appellee company to account for such cars to the owners thereof. The phrase is properly construed to be descriptive of the cars to be insured. Had it been the intention of the insurer to insure the liability, only, of the assured to respond to the demands of the owners of the cars, this intention could have been readily and unmistakably manifested by the use of apt words and phrases. It was a part of the same contract of insurance to insure the liability of the assured to respond to the claims of owners of freight, merchandise, baggage, etc., in transit in and on cars on its line of road against loss by fire, and the insurer found no difficulty in clearly expressing the obligation so assumed. Item No. 46 in the same policy is as follows:

"46. $20,000—On the liability of the assured as common carriers and warehousemen, including their interest as owners for freight, merchandise, baggage, and all other property (excluding cotton on open flat cars or petroleum in tank cars) while in transit in or on cars on the line of the road hereby insured, and its branches, spurs, side-tracks and yards owned or operated by the assured at the date of this policy," etc.

So, if the undertaking sought to be expressed in item 44 under consideration had been to insure the liability of the assured to account to the owners of cars for any loss

or damage which might come to such cars while on the line of appellee's road, it is clear the author of the policy had the requisite command of language to enable him to set forth such undertaking in clear and unambiguous terms.

Nor is the right of recovery limited to such cars as it should be made to appear by evidence the appellee company was absolutely legally liable to account and pay for to the owners thereof. The proper construction of the policy in this respect is, that all freight cars consumed by the fire while on the line of the appellee's road and in its care and custody, with respect to which it had some duty to perform of such nature it might be charged with legal liability to account to the owners therefor or to be subjected to claims and demands to so account, and to possible litigation growing out of such claims and demands, were protected by the policy.

The contention the word "liable," incorporated in item 44, means an absolute legal and fixed liability, is not tenable. In Webster's Dictionary the word "liable" is said to refer to a future possible or probable happening which may not actually occur. And the same lexicographer further defines the word as follows: "exposed to a certain contingency or casualty more or less probable." The word as used in the policy does not signify a perfected or fixed legal liability, but rather a condition out of which a legal liability may arise. The word, as most frequently used, does not necessarily exclude the idea of a contingency. An assignor of a negotiable note may, with no incorrectness of speech, be said to be liable upon his assignment; but his obligation is not an absolute fixed legal liability, but is contingent upon the financial condition of the maker and the exercise of diligence on the part of the assignee, if diligence could avail to secure payment of the note from the maker thereof. Law writers and courts, without improper use of language, may and do declare the liability of a warehouseman begins when

the goods are delivered, etc., and such liability ends on the delivery of the property to the person rightfully entitled to it, without being understood to assert that an obligation on the part of the warehouseman to answer in any manner has become fixed and absolute. The correct meaning of such expressions is that the warehouseman has such connection with the property as that a fixed liability may arise. The italicized phrase in said item 44 was intended to indicate the policy was to protect cars to which the appellee should bear such relation as to become charged with the performance of duties which might involve a fixed legal liability. All cars as to which appellee owed such duty were covered, and no more was required than that the evidence should establish the existence of such relation of the appellee company to the cars. That relation established, it is well settled an insurable interest rested in the appellee company, that it might lawfully insure the cars in its own name and sue for and recover the value thereof if destroyed by fire, holding the excess over its own interest in the property for the benefit of those who had entrusted the cars to it. *Fire Insurance Ass.* v. *Merchants and Miners' Transp. Co.* 66 Md. 347; *California Ins. Co.* v. *Union Compress Co.* 133 U. S. 387; *Home Ins. Co.* v. *Baltimore Warehouse Co.* 93 id. 527; *Siter* v. *Morris*, 13 Pa. St. 218; *Hope Oil Mill Compress Co.* v. *Phenix Assurance Co.* 74 Miss. 320; *Snow* v. *Carr*, 61 Ala. 363; *Hough, Clendenning & Co.* v. *People's Fire Ins. Co.* 36 Md. 432; *Baxter* v. *Hartford Ins. Co.* 11 Biss. 306.

The trial court ruled correctly in passing upon the propositions of law applicable to the case.

The judgment of the Appellate Court is conclusive on all questions of fact, and that judgment is affirmed.

*Judgment affirmed.*