THE STATE OF UTAH ex rel. M. A. BREEDEN, Attorney-General, Relator, v. GEORGE A. SHEETS, Respondent.

No. 1474.    (72 Pac. 334.)

Municipal Corporations: Chief of Police: Appointment by Mayor: Consent of Council: Confirmation.
Revised Statutes 1898, section 214, provides: "The mayor, by and with the advice and consent of the council, may appoint all such officers or agents as may be provided for by law or ordinance, and in like manner fill all vacancies among the same, except as otherwise provided by law." Section 215 provides that an appointive officer may be removed by the mayor, with

the concurrence of a majority of the members of the city council. Section 200 provides: "The majority of the council elected, shall constitute a quorum to do business." Section 202 provides that the concurrence of a majority of the members elected is necessary to the passage of all ordinances, and all propositions to create any liability against the city. *Held,* that where the office of chief of police was previously created, and the salary fixed by city ordinance, the confirmation by the city council of an appointment to the office by the mayor created a contingent liability against the city, and the consent **of** a majority of the council was necessary.

McCARTY, J., dissenting in part.

(Decided April 30, 1903.)

Original action of quo warranto instituted in this court by the Attorney-General, on behalf of the State, to test the right of the defendant to the office of chief of police of Salt Lake City.

JUDGMENT OF OUSTER AGAINST DEFENDANT.

*Hon. M. A. Breeden,* Attorney-General, and *Messrs. Richards & Varian* for relator.

*George L. Nye, Esq.,* City Attorney, *Messrs. C. F. & F. C. Loofbourow* and *Messrs. Powers, Straup & Lippman* for respondent.

BASKIN, C. J.—This is an original action of quo warranto instituted in this court by the Attorney-General, on behalf of the State, to test the right of the defendant, George A. Sheets, to the office of chief of police of Salt Lake City, which he claims under an alleged appointment by the mayor and city council, and in pursuance of which he entered upon and is discharging the duties of said office. A general demurrer is interposed to the complaint. The validity of the appointment of the defendant is the only question involved.

The office of chief of police was created by city ordinance. Section 214, Revised Statutes 1898, is as follows: "The mayor, by and with the advice and consent of the council, may appoint all such officers and

agents as may be provided for by law or ordinance, and, in like manner, fill all vacancies among the same, except as otherwise provided by law.'' It is admitted that at the time of the alleged appointment of Sheets there was a vacancy in said office, and that the mayor had the authority, by and with the advice and consent of the city council, to fill the same by appointment. The appointment of Sheets was sent by the mayor to the city council for approval. The council consists of fifteen members, and at a regular meeting of the same, at which only thirteen members were present, a motion to consent to and confirm the appointment was made, and a vote thereon was taken, in which seven of the thirteen members present voted for, and six against, the motion.

On the part of the State it is contended that the consent of a majority of all of the members of the council was necessary, under the section of the statute before quoted, while on behalf of the defendant it is claimed that the consent of the majority of the quorum present was only required. The number of councilmen whose consent is necessary to confirm an appointment by the mayor is not, in terms, expressed in said section of the statute. The intention of said section in that respect is ascertainable by the inspection of other provisions of the statute which shed light upon the subject. Section 200, Revised Statutes 1898, provides that ''the majority of the council elected shall constitute a quorum to do business.'' The general provision, if it were not limited by subsequent provisions, would sustain the contention of the defendant, but there are others by which it is limited. Under the provisions of section 202, Revised Statutes 1898, the concurrence of a majority of the members elected to the city council is necessary to the passage of all ordinances, and all propositions to create any liability against the city. The State claims that the confirmation of an appointment creates a liability against the city, and requires the concurrence of a majority of the councilmen. On the other hand, the defendant contends that no liability is created

thereby.   It follows from the provisions of section 202 that, if any liability is created against the city by the appointment, a concurrence of a majority of the members composing the council is necessary.   The question hinges upon the meaning of the word "liability," as used in said section of the statute.   The second definition of the word "liability" in Black's Law Dictionary, is "Exposed or subject to a given contingency, risk, or casualty, which is more or less probable."   In Rapalje's Law Dictionary it is said that liability is "the condition of being actually or potentially subject to an obligation; is used either generally, as including every kind of obligation, or, in a more special sense, to denote inchoate, future, unascertained, or imperfect obligations, as opposed to debts, the essence of which is that they are ascertained and certain."   Anderson's Law Dictionary defines a contingent liability to be "a liability which is not absolute, but depends upon an uncertain event; as the liability of an indorser."   The liability of an indorser or a surety is contingent, and not actual, until default by the payee or principal.   In the case of Cochran & Sayre v. U. S., 157 U. S. 286, 296, 15 Sup. Ct. 628, 632, 39 L. Ed. 704, the court said:   "We know of no definition of the word 'liability,' either given in the dictionaries, or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency.   In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or to errors; and in Webster's Dictionary the word 'liable' is said to refer 'to a possible or probable happening, which may not actually occur; as, horses are liable to slip; even the sagacious are liable to make mistakes.'"   In Home Ins. Co. v. P. & P. U. R. Co., 178 Ill. 64, 70, 52 N. E. 862, 863, it is said that " the word ['liable'], as used in the policy, does not signify a perfected or fixed legal liability, but, rather, a condition out of which a legal liability may arise.   The word, as most frequently used, does not

necessarily exclude the idea of a contingency." In view of the foregoing definitions, it is clear that the confirmation by the city council of an appointment by the mayor, when the office has been previously created and the salary has been previously fixed, creates a contingent liability, dependent only upon the future acceptance, qualification, and discharge of the duties of the office by the appointee—events which, upon an appointment, were liable to occur, as was evidently anticipated by the city council when the appointment was made. This being so, it required the consent of a majority of the councilmen to confirm the appointment of the defendant. This conclusion is strengthened by the provisions of section 215, Revised Statutes 1898, in which it is provided that an appointive officer may be removed by the mayor with the concurrence of a majority of the members of the city council, or by the city council with the concurrence of the mayor. It is well settled that "the power to remove is incident to the power to appoint, in the absence of some provision of law fixing the duration of the office and the mode of removal." 23 Am. and Eng. Ency. Law, 435, and the numerous cases there cited in note 10. The duration of the term of chief of police is not fixed by law. In view of the foregoing principles, it is a reasonable conclusion that the word "council" was used in section 214 in the same sense as in section 215, and that it was intended that the concurrence of the same number of the councilmen necessary in a removal by the mayor is also necessary to both a removal by the council and an appointment by the mayor, for, unless that force is given to the word "council," the anomaly is presented of the Legislature requiring a concurrence of a majority to a removal by the mayor, and a concurrence of a majority only of a quorum of the council when the removal is made by it.

We are clearly of the opinion that the defendant has not been legally appointed. It is therefore ordered that the said George A. Sheets be, and he is hereby,

ousted from the office of chief of police of Salt Lake City, and that he henceforth refrain from performing any of the duties thereof, and that he pay the costs in this behalf expended, taxed at $— —.

McCARTY, J.—I concur in that portion of the opinion wherein it is held that it requires a majority of all the members elected to the city council to confirm an appointee of the mayor, but dissent from that part which holds that such confirmation creates a liability against the city.