## McCLAIN v. CHURCH, Mayor.

No. 5022. Decided June 12, 1930. (289 P. 88.)

*C. N. Leatherbury,* of Eureka, for plaintiff.

*Claude F. Baker,* of Eureka, for defendant.

STRAUP, J.

The electorate of the city of Eureka, in Juab county, in electing a mayor and a city council of five members, divided into factions or parties called the "citizens" on the one side and the "taxpayers" on the other. The citizens elected the mayor and two councilmen, the taxpayers three councilmen. The municipal government of the city so functioned until recently, when one of its councilmen, a taxpayer, died. The statute requires the vacancy to be filled by the city council, by the four remaining councilmen, the two citizens and the two taxpayers. Each faction insisting the vacancy be filled by a member of its party, the four members are voting two to two for their respective nominees, with no choice. The mayor threatens to break the tie vote by voting with the two citizen councilmen. The taxpayer councilmen assert the mayor is not entitled to cast a vote on such a subject or

proposition. Their opponents and the mayor assert the contrary.

On a petition of the city marshal, a taxpayer, an alternative writ of prohibition was granted by us temporarily restraining the mayor from casting the decisive vote. The marshal avers that the mayor is but an executive officer, is not a member of the city council, has no vote in the selection to fill the vacancy though the vote of the councilmen is a tie, and that the threatened action of the mayor is unauthorized and unlawful. The mayor demurs and asserts the right to vote on all questions coming before the council, when the vote of its members constituting a quorum is a tie. Eureka is a city of the third class, having a mayor and a city council of five members, all elected at large. The statutes bearing on the question are as follows:

Section 533, Comp. Laws Utah 1917, which provides that the municipal government of all cities of the third class is vested in a mayor and city council and that the city council shall be composed of five members chosen at large by the qualified voters of the city; section 536, that the mayor is the chief executive of cities of the third class; section 539, that "in cities of the third class, the mayor shall preside at all meetings of the city council, but shall not vote except in case of a tie, when he shall give the casting vote"; section 548, that "if any vacancies shall occur in the office of councilmen by death, resignation, removal, or otherwise, such vacancy shall be filled for the unexpired term by appointment of the city council from the ward in which the vacancy occurs"; section 551, that the majority of the council elected shall constitute a quorum to do business; section 553, that the city council shall sit with open doors and keep a journal of its own proceedings and that "the yeas and nays shall be taken upon the passage of all ordinances and all propositions to create any liability against the city, and in all other cases at the request of any member, which shall be entered upon the journal of its proceedings. The concurrence of a majority of the members elected to the city

council shall be necessary to the passage of any such ordinance or proposition; provided, that in cities where there are an even number of councilmen the consent or concurrence of one-half of the councilmen elected shall be sufficient to confirm an appointment or concur in the removal of an appointive officer"; section 601, that " in cities of the third class the mayor, by and with the advice and consent of the council, may appoint all such officers and agents as may be provided for by law or ordinance, and in like manner fill all vacancies among the same, except as otherwise provided by law"; and section 602, that, except as otherwise provided by law, the term of office of all appointive officers shall be until the municipal election next following their appointment and until their successors are duly appointed and qualified, unless, in cities of the third class, sooner removed by the mayor with the concurrence of a majority of the members of the city council or by the city council with the concurrence of the mayor.

Under the statute it is clear that the mayor is a mere executive and a presiding officer, the city council the legislative body, and that the mayor has no vote concerning subjects or questions before the council, "except in case of a tie," and as by section 539 provided. It is just as as clear that the filling of a vacancy in the council is not by appointment of the mayor by and with the advice and consent of the council as provided for appointments under section 601, but by the city council itself as by section 548 provided. The mayor not being a member of the city council or governing body, and having functions only of an executive or administrative character (2 Dillon, Municipal Corps. [5th Ed.] § 513; 2 McQuillin, Municipal Corps. [2d Ed.] § 620), and, as clearly indicated by our statute, the controlling question is where there is a tie vote, as here, of all of the remaining elected members of the council, constituting a quorum, may the mayor cast the decisive vote in filling the vacancy? Looking alone at section 539, that the mayor shall preside "at all meetings of the city council, but shall not vote except

in case of a tie, when he shall give the casting vote," it would seem he was authorized to give the casting vote in all cases "of a tie," except as to matters referred to in section 553 or other matters requiring a favorable vote of a designated number of elected or other members of the council. His power to do so is not restricted or limited to any particular question or subject except as controlled by other provisions of the statute. Under a statute, "in case of a tie vote in the city council upon any question whatever, the mayor shall have the right to vote and shall decide the question in dispute," it was held (*Hecht* v. *Coale*, 93 Md. 692, 49 A. 660) that he had the power to cast the deciding vote on all questions of a tie vote of the council. While such language is a little different from our statute, yet in effect is no broader. The same result was reached by the Connecticut court in *State* v. *Pinkerman*, 63 Conn. 176, 28 A. 110, 22 L. R. A. 653, under a statute which provided that the mayor had the "casting vote only in case of a tie." So too by the Illinois court, in the case of *Carrollton* v. *Clark*, 21 Ill. App. 79, under a statute providing that "the mayor shall preside at all meetings of the city council, but shall not vote except in case of a tie, when he shall give the casting vote." So also in *Brown* v. *Foster*, 88 Me. 49, 33 A. 662, 31 L. R. A. 116. By a "casting vote" is meant when the assembly or council is equally divided. *Wooster* v. *Mullins*, 64 Conn. 340, 30 A. 144, 25 L. R. A. 694. In considering cases, the statutes of the respective jurisdictions must also be considered. The New York statute limited the right of the president of the council to vote on resolutions and ordinances submitted in case of a tie and hence could not vote on other matters though there was a tie. *People ex rel. Argus Co.* v. *Bresler*, 171 N. Y. 302, 63 N. E. 1093. To that effect is also *Cate* v. *Martin*, 70 N. H. 135, 46 A. 54, 48 L. R. A. 613. However, the chief contention of the petitioner is that under section 553, "all propositions to create any liability against the city * * * the concurrence of a majority of the members elected to the city council shall be necessary" to the passage of any such proposition,

the filling of a vacancy in the office of a councilman, is creating a "liability against the city." Hence the contention is that to fill such a vacancy requires a concurring vote of a "majority of the members elected to the city council," here requires a concurring vote of at least three "members elected to the city council," and, as the mayor is not a member "elected to the city council," he, notwithstanding the tie vote of the members of the council and of section 539, is not authorized to vote on the proposition to fill the vacancy; and, as long as the two warring factions of the council stand two to two, the vacancy for the unexpired term of the deceased member cannot lawfully be filled. To support the contention that the filling of the vacancy is to create a liability against the city and hence to fill it requires at least three "members elected to the city council" voting therefor, the petitioner mainly relies on the case of *State ex rel.* v. *Sheets*, 26 Utah 105, 72 P. 334, and 43 C. J. 507. In the Sheets Case, under Rev. St. 1898, § 214, providing that "the mayor, by and with the advice and consent of the council, may appoint all such officers and agents as may be provided for by law or ordinance, and, in like manner, fill all vacancies among the same, except as otherwise provided by law" (corresponding with section 601, Comp. Laws Utah 1917), section 200, providing that a majority of the council elected shall constitute a quorum to do business (corresponding with section 551, Comp. Laws Utah 1917), and section 202, providing that a concurrence of a majority of the members elected is necessary to the passage of all ordinances and all propositions to create any liability against the city (corresponding with section 553, Comp. Laws Utah 1917), it was held that, where the office of chief of police previously created and the salary fixed by city ordinance, the confirmation by the city council of an appointment to the office by the mayor created a contingent liability against the city and hence the consent of a majority of the council was necessary. There a vacancy arose in the office of chief of police of Salt Lake City. The mayor appointed Sheets to

fill the vacancy. The city council consisted of fifteen members. At a regular meeting of the council, when thirteen members were present, seven members voted for the confirmation and six against it. The holding of this court was that filling a vacancy at a salary created by ordinance constituted the creation of a liability against the city, and hence to lawfully confirm the appointment required a vote of at least eight members of the city council, or a majority of the elected members thereof, and as only seven members voted for the confirmation the appointee was not lawfully entitled to hold the office and thus was ousted therefrom.

In the Sheets Case the question involved the filling of a vacancy in an appointive office, an office created by the municipality, and as the administration of its affairs might require and which at any time could have been abolished by it. The filling of the vacancy here relates to an elective office, one created by statute and which the municipality may not abolish. The statute does not fix the salary or compensation to be paid a councilman. That was done by ordinance of the municipality fixing the salary at $180 a year which was established before the councilman deceased was elected. When a vacancy occurs, it is the duty of the municipality to fill it. When it is filled, the appointee steps into the shoes of the elected councilman. The argument is that, when the elected councilman died, his salary or compensation ceased, and, when the vacancy is filled, the salary or compensation is revived which, it is contended, is creating a liability against the city within the meaning of section 553 requiring a "concurrence of a majority of the members elected to the city council." We think the contention untenable. The compensation or salary to be paid and as fixed by prior ordinance attaches and is an incident to the office itself and is payable to whomsoever holds or is entitled to hold the office. Whatever liability against the city is created in such respect was created when the office was created and the ordinance established. Filling the vacancy is not creating a new liability or increasing or

enhancing the liability as it existed when the councilman died. When the vacancy is filled, the liability is just the same as though there had been no vacancy.

We thus are of the opinion that filling a vacancy in the office of city councilman is not creating a new liability against the city within the meaning of section 553. The Sheets Case is disapproved in so far as such view may be in conflict with it.

Further, section 553 must be considered in connection with sections 539 and 548. Section 548 provides that, if a vacancy occurs in the office of city councilman "such vacancy shall be filled for the unexpired term by appointment of the city council." That section does not require the vacancy to be filled by a "majority of the members elected to the city council." It requires it to be filled by "the city council," by a constituted quorum as by section 551 provided. Hence the cited authority of 43 C. J. 506, 507, is not, as we think, applicable.

We are therefore of the opinion that the mayor is entitled to give the casting or deciding vote, that the alternative writ heretofore issued should be recalled, and that the permanent writ should be denied. Such is the order.

CHERRY, C. J., and EPHRAIM HANSON and FOLLAND, JJ., concur.

ELIAS HANSEN, J. (dissenting).

I am of the opinion that the alternative writ heretofore issued should be made permanent. In my opinion the case of *State ex rel.* v. *Sheets*, 26 Utah 105, 72 P. 334, is controlling in this case. If a majority of the city must vote for the confirmation of an appointment by the mayor of a chief of police because a liability is thereby created against the city, for the same reason a majority of the city council

must vote to fill a vacancy in the office of city councilman because the filling of such vacancy creates a liability. The fact that the office of a chief of police is created by a city ordinance and the office of a city councilman is created by an act of the Legislature is without significance. The creation of an office in the absence of a provision for compensation to be paid to the person who holds the office so created does not create a liability. Compensation is not a necessary incident to an office. The city council fixes the compensation that shall be paid to an officer of a city whether the office is created by a city ordinance or by an act of the Legislature. It is as much the duty of the proper officers of a city to fill a vacancy in an office created by city ordinance as it is to fill a vacancy in an office created by an act of the Legislature.

In this case there are four councilmen. Any three of them can fill the vacancy caused by the death of one of their members without the aid of the mayor. The fact that they fail to do their duty in such respect is no justification for this court to overrule a case which has long been the established law in this jurisdiction. The prior decisions of this court should be followed unless there is an urgent necessity for not doing so. If the decisions of this court are to be overruled whenever the personnel of this court are not in entire accord with its previous decisions, our law would be thrown into confusion and neither the bench or the bar will be able to foretell with any degree of certainty the final results of any litigation.

I think the law as announced in the Sheets Case should be applied and followed in this case.